JAN 18 2017

VIRGINIA: VSB CLERK'S OFFICE

JAN 20 2017

COMPUTER SECTION

FILED
16 NOV 29 PM 12: 13
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

BEFORE THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

IN THE MATTER OF
CHRISTOPHER DECOY PARROTT

CASE NO. CL2016-12340
VSB DOCKET NO. 16-053-104072

## AGREED DISPOSITION MEMORANDUM ORDER

This matter came to be heard on November 21, 2016, before a Three-Judge Circuit Court, upon the joint request of the parties for the Court to accept the Agreed Disposition endorsed by the parties and offered to the Court as provided by the Rules of the Supreme Court of Virginia. The panel consisted of the Honorable Paul W. Cella, Chief Judge of the Eleventh Judicial Circuit, Designated Chief Judge, the Honorable Joanne F. Alper, Retired Judge of the Seventeenth Judicial Circuit, and the Honorable Thomas D. Horne, Retired Judge of the Twentieth Judicial Circuit. Christopher DeCoy Parrott was present and was not represented by counsel. The Virginia State Bar appeared through its Assistant Bar Counsel, Elizabeth K. Shoenfeld. The Chief Judge polled the members of the court as to whether any of them were aware of any personal or financial interest or bias which would preclude any of them from fairly hearing the matter to which each judge responded in the negative. Court Reporter, Jennifer Hairfield, Chandler and Halasz, P.O. Box 9349, Richmond, Virginia 23227, telephone (804) 730-1222, after being duly sworn, reported the hearing and transcribed the proceedings.

**WHEREFORE**, upon consideration of the Proposed Agreed Disposition, the Subcommittee Certification, Respondent's Answer and Demand, Rule to Show Cause, Respondent's Disciplinary Record, the Arguments of the Parties, and after due deliberation,

It is **ORDERED** that the Circuit Court accepts the Agreed Disposition and the Respondent shall receive a 21-month suspension, as set forth in the Agreed Disposition, which is attached and incorporated in this Memorandum Order.

It is further **ORDERED** that the sanction is effective November 21, 2016.

The Respondent must comply with the requirements of Part Six, § IV, ¶ 13-29 of the Rules of the Supreme Court of Virginia. The Respondent shall forthwith give notice by certified mail of the Suspension of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing attorneys and presiding Judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his or her care in conformity with the wishes of his clients. The Respondent shall give such notice within 14 days of the effective date of the Suspension, and make such arrangements as are required herein within 45 days of the effective date of the Suspension. The Respondent shall also furnish proof to the Bar within 60 days of the effective day of the Suspension that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of the Suspension, he shall submit an affidavit to that effect within 60 days of the effective date of the Suspension to the Clerk of the Disciplinary System at the Virginia State Bar. All issues concerning the adequacy of the notice and arrangements required by Paragraph 13-29 shall be determined by the Virginia State Bar Disciplinary Board, which may impose a sanction of Revocation or additional Suspension for failure to comply with the requirements of this subparagraph.

The Clerk of the Disciplinary System shall assess costs pursuant to ¶13-9 E. of the Rules.

A copy teste of this Order shall be mailed, certified mail, return receipt requested, to the Respondent, Christopher DeCoy Parrott, at his last address of record with the Virginia State Bar, The Parrott Law Firm, 12073 Lancers Ct., Manassas, VA 20112, with an attested copy to: Elizabeth K. Shoenfeld, Assistant Bar Counsel, Virginia State Bar, 1111 East Main Street, Suite 700, Richmond, Virginia 23219-0026, and to the Clerk of the Disciplinary System, Virginia State Bar, 1111 East Main Street, Suite 700, Richmond, VA 23219-0026.

ENTERED THIS 21st DAY OF November, 2016

CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

*Paul W. Cella*

Hon. Paul W. Cella, Chief Judge
Three-Judge Circuit Court

A COPY TESTE:
JOHN T. FREY, CLERK
BY: _____
Deputy Clerk
Date: 01/09/2017
Original retained in the office of
the Clerk of the Circuit Court of
Fairfax County, Virginia

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

VIRGINIA STATE BAR EX REL
FIFTH DISTRICT COMMITTEE
VSB Docket No. 16-053-104072,

        Complainant,

v.                                                   Case No. 2016-12340

CHRISTOPHER DECOY PARROTT,

        Respondent

## AGREED DISPOSITION
## (21 MONTH SUSPENSION)

Pursuant to the Rules of the Virginia Supreme Court Rules of Court Part 6, Section IV, Paragraph 13-6.H, the Virginia State Bar, by Elizabeth K. Shoenfeld, Assistant Bar Counsel and Christopher DeCoy Parrott, Respondent, hereby enter into the following Agreed Disposition arising out of this matter.

### I. STIPULATIONS OF FACT

1. At all relevant times, Respondent has been an attorney licensed to practice law in the Commonwealth of Virginia.

2. In June 2013, Complainant Angel Tighe retained Respondent to pursue a claim against Jared's Galleria of Jewelry ("Jared's"). Specifically, Ms. Tighe asserted that Jared's damaged her engagement ring during a cleaning.

3. Ms. Tighe signed a contract for legal services and paid Respondent an advance legal fee of $1,600. Respondent claims that he deposited this money into a BB&T "business value" account, which he said he treated as his trust account.

4. Respondent stated that he did not know whether he ever withdrew Ms. Tighe's $1,600 retainer from this account. He said that it was his common practice to leave fees in this account long after they were earned so that he does not "get in any financial problems."

5. In July 2013, Respondent told Ms. Tighe that she had a court date scheduled for October 23, 2013. Despite this representation to Ms. Tighe, Respondent had not filed any lawsuit

1

on Ms. Tighe's behalf and, therefore, he could not have scheduled anything with the Court.

6. On October 7, 2013, Ms. Tighe emailed Respondent with questions about the supposed October 23, 2013 court date. Respondent called Ms. Tighe and told her that Jared's had requested a continuance and the October date was continued until sometime in 2014. This statement was also false.

7. Between October 2013 and September 2014, Ms. Tighe continued to follow up with Respondent about the status of the lawsuit Respondent had told her he filed.

8. At one point, Respondent told Ms. Tighe that Jared's had made a settlement offer but it was insufficient. Respondent never provided Ms. Tighe with the details of the settlement offer he claimed he received. In fact, Respondent neither solicited nor received any settlement offers from Jared's.

9. In September 2014, Respondent told Ms. Tighe that he was going to file her case in Circuit Court. According to Ms. Tighe, Respondent said that he needed to do this because the Circuit Court had stricter timelines that would force Jared's to respond to him. Respondent also told Ms. Tighe that she needed to pay him an additional $700 so he could file in Circuit Court.

10. Ms. Tighe wrote Respondent a check for $700, which Respondent said that he deposited into his BB&T "business value" account in October 2014.

11. Between September 2014 and January 2015, Ms. Tighe emailed Respondent several times asking for a copy of the lawsuit filed in Circuit Court.

12. On January 9, 2015, Respondent sent Ms. Tighe an email attaching what purported to be the complaint in the lawsuit filed in the Circuit Court for Loudoun County on her behalf. The document was signed by Respondent, but it was not file-stamped and the case number was left blank.

13. In fact, the lawsuit complaint that Respondent emailed Ms. Tighe on January 9, 2015 was never filed with any court.

14. In February 2015, Respondent told Ms. Tighe that he was waiting on a term day for the case to be set for trial.

15. On April 30, 2015, Ms. Tighe emailed Respondent. Respondent responded with a phone call and again told Ms. Tighe that he was waiting on a term day.

16. Ms. Tighe contacted another attorney, Ciara Miller. Ms. Miller verified that Ms. Tighe did not have a lawsuit pending in any court in Loudoun County.

17. After learning that Respondent had misrepresented the status of her case for nearly two years, Ms. Tighe again called Respondent and asked him whether her lawsuit had been filed. Respondent assured her that it had been filed and reiterated that he was waiting for a term day.

2

18. Ms. Tighe then retained Ms. Miller. On May 5, 2015, Ms. Miller notified Respondent that she represented Ms. Tighe. Ms. Miller requested that Respondent return Ms. Tighe's file and her $2,300 retainer. Respondent did not reply to Ms. Miller.

19. On June 16, 2015, Ms. Tighe wrote to Respondent and again asked him to return her file and $2,300 retainer. Again, Respondent did not reply or otherwise comply with Rule of Professional Conduct 1.16(d) by refunding the unearned legal fee and the file.

20. Despite Respondent's failure to return Ms. Tighe's file and her money, Ms. Tighe's new counsel was able to resolve the matter with Jared's quickly and without the need for a trial.

21. On March 15, 2016, which was more than 10 months after she fired Respondent, Respondent still had not refunded any of Ms. Tighe's money. Accordingly, Ms. Tighe filed suit against Respondent in the Prince William County General District Court. A hearing date was set for April 27, 2016.

22. Just two days before the April 27, 2016 hearing, Respondent paid Ms. Tighe $4,675, which included the $2,300 that Ms. Tighe paid him plus $2,375 for attorney's fees and costs.

23. At no time did Respondent tell Ms. Tighe that he had given her false information about the status of her case.

24. As the result of Respondent's actions, Ms. Tighe also filed a complaint with the Virginia State Bar ("VSB").

25. In furtherance of the VSB's investigation, Respondent was interviewed by VSB Investigator Brian Callen. During the course of an interview, Respondent claimed that he had entrusted Ms. Tighe's case to a volunteer legal assistant named Carmen Romero.

26. Respondent told Investigator Callen that he had met Ms. Romero at a local Home Depot. Respondent said that Ms. Romero told him that she had no legal experience whatsoever, but that she wanted to learn more about the legal field and therefore she agreed to work for him as a volunteer.

27. Respondent said that he prepared a warrant in debt to be filed on Ms. Tighe's behalf in the Loudoun County General District Court. He further said that he gave Ms. Romero the warrant in debt, along with cash for the filing fee and instructed her to take the cash to the bank to get a money order to pay the filing fee, and then to file the suit. Respondent also said that Ms. Romero told him the lawsuit was filed and that he relied on this representation. Respondent did not produce a copy of the lawsuit or of the correspondence to the Court requesting that it be filed.

28. Respondent said that when he gave Ms. Tighe updates about her case that turned out to be false, he was relying on information provided to him by Ms. Romero.

29. At the time Respondent was interviewed, Respondent said that Ms. Romero was no longer working in his office in any capacity. Respondent claimed that he did not know

3

where Ms. Romero was, but that he thought she had returned to her native county of Peru.

30. Respondent told Investigator Callen that he did not have any contact information for Ms. Romero. He said that he saw Ms. Romero's driver's license, but he did not make a copy of it and did not otherwise know her precise address. Respondent said that Ms. Romero had a cell phone, but although he had the number at one time he no longer possessed it. He claimed that Ms. Romero never provided him with an email address and that he and Ms. Romero never emailed each other.

31. Respondent stated that because Ms. Romero worked for him as a volunteer, he had neither payroll nor billing records for her.

32. Respondent could not identify any other person who knew Ms. Romero or was aware that Ms. Romero was working for him.

33. Respondent admitted that he did not supervise Ms. Romero properly, but denied that he knowingly misrepresented the status of Ms. Tighe's case.

34. Ms. Tighe told Investigator Callen that she had never heard of Carmen Romero, and that if such a person was working on her case she was unaware of it.

35. In furtherance of his investigation, Investigator Callen searched Accurint, a public records database, for a person named Carmen Romero between the ages of 24 to 27 (the age Respondent claimed she was) with a past or current address in Manassas, Virginia (the area in which Respondent claimed she lived). No matching results were found.

## II. NATURE OF MISCONDUCT

Such conduct by the Respondent constitutes misconduct in violation of the following provisions of the Rules of Professional Conduct:

RULE 1.3    Diligence

    (a)    A lawyer shall act with reasonable diligence and promptness in representing a client.

    (b)    A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but may withdraw as permitted under Rule 1.16.

RULE 1.4    Communication

    (a)    A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

4

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

RULE 1.15  Safekeeping Property

(a) <u>Depositing Funds</u>.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

(2) For lawyers or law firms located in Virginia, a lawyer trust account shall be maintained only at a financial institution approved by the Virginia State Bar, unless otherwise expressly directed in writing by the client for whom the funds are being held.

(b) <u>Specific Duties.</u> A lawyer shall:

(2) identify and label securities and properties of a client, or those held by a lawyer as a fiduciary, promptly upon receipt;

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

(4) promptly pay or deliver to the client or another as requested by such person the funds, securities, or other properties in the possession of the lawyer that such person is entitled to receive; and

(5) not disburse funds or use property of a client or third party without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

RULE 1.16  Declining Or Terminating Representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, refunding any advance payment of fee that has not been earned and handling records as indicated in paragraph (e).

RULE 8.1  Bar Admission And Disciplinary Matters

An applicant for admission to the bar, or a lawyer already admitted to the bar, in connection with a bar admission application, any certification required to be filed as a condition

5

of maintaining or renewing a license to practice law, or in connection with a disciplinary matter, shall not:

    (a)    knowingly make a false statement of material fact . . . .

RULE 8.4    Misconduct

It is professional misconduct for a lawyer to:

    (c)    engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law . . . .

### III. PROPOSED DISPOSITION

Accordingly, Assistant Bar Counsel and the Respondent tender to the Court for its approval the agreed disposition of 21-month suspension as representing an appropriate sanction if this matter were to be heard through an evidentiary hearing.

Respondent agrees that if the three-judge court designated to hear this matter accepts this Agreed Disposition, this matter becomes Final and Non-Appealable. Respondent also agrees that in the event the three-judge court designated to hear this matter declines to accept this Agreed Disposition: i) this matter will proceed to the sanctions phase on the currently scheduled date; ii) the same three-judge court shall hear, preside over and conclude the hearing of this matter in accordance with the designation by the Supreme Court of Virginia; and iii) Respondent waives any challenge to the composition of the three-judge court based on its consideration and/or rejection of this joint recommendation.

If the Agreed Disposition is approved, the Clerk of the Disciplinary System shall assess an administrative fee.

THE VIRGINIA STATE BAR

By: _____
Elizabeth K. Shoenfeld, Assistant Bar Counsel

6

_____
Christopher DeCoy Parrott, Respondent, *pro se*

7